**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

UNITED STATES OF AMERICA,

      Plaintiff,

      v.

META PLATFORMS, INC., f/k/a
FACEBOOK, INC.,

      Defendant.

22 Civ. 5187 (____)


# MEMORANDUM OF LAW IN SUPPORT OF JOINT MOTION FOR APPROVAL OF PROPOSED SETTLEMENT AGREEMENT

DAMIAN WILLIAMS
United States Attorney for the
Southern District of New York

ELLEN BLAIN
DAVID J. KENNEDY
CHRISTINE S. POSCABLO
Assistant United States Attorneys
86 Chambers Street, 3rd Floor
New York, New York 10007
Tel.: (212) 637-2733
david.kennedy2@usdoj.gov

*Counsel for the United States of
America*

Natalie Naugle
Director and Associate General Counsel,
Litigation
META PLATFORMS, INC.
181 Fremont Street
San Francisco, CA 94105
nnaugle@fb.com

Rosemarie T. Ring
GIBSON, DUNN & CRUTCHER LLP
555 Mission Street
San Francisco, CA 94105
Tel.: (415) 393-8247
rring@gibsondunn.com

*Counsel for Meta Platforms, Inc.*

# TABLE OF CONTENTS

BACKGROUND ........................................................................................................................1

I.     Allegations in the Complaint ......................................................................................1

II.    The Proposed Settlement Agreement...........................................................................3

ARGUMENT ...........................................................................................................................4

I.     The Standard for Approval of a Proposed Settlement Agreement ....................................4

II.    The Settlement Agreement Is Fair and Reasonable, and Its Injunctive Relief Is in the
       Public Interest…………………...………………………………………………………...6

CONCLUSION .......................................................................................................................8

Plaintiff United States of America (the "United States"), together with Defendant Meta Platforms, Inc., f/k/a Facebook, Inc. ("Meta"), respectfully submit this memorandum of law in support of their joint motion for approval of the proposed settlement agreement annexed hereto as Exhibit A (the "Settlement Agreement").

## BACKGROUND

### I. Allegations in the Complaint

The allegations in the Complaint stem from an investigation by the Department of Housing and Urban Development into Meta's algorithmic delivery practices for housing ads. On August 13, 2018, the Assistant Secretary for Fair Housing and Equal Opportunity filed a timely administrative complaint with HUD alleging that Meta's ad delivery system violated the Fair Housing Act ("FHA"). (Compl. ¶ 96.) Based on HUD's investigation of the administrative complaint, the Secretary determined that there was reasonable cause to believe that Meta's ad delivery system discriminates on the basis of protected characteristics in violation of the FHA. (Compl. ¶ 98.) On March 28, 2019, therefore, the Secretary issued a Charge of Discrimination under 42 U.S.C. § 3610(g)(2), charging Meta with engaging in a discriminatory housing practice in violation of the FHA. (Compl. ¶ 99.) On April 16, 2019, Meta timely elected to have the charge decided in federal district court in accordance with 42 U.S.C. § 3612(a). (Compl. ¶ 100.) Pursuant to that statute, where, as here, if an election is made, "the Attorney General shall commence and maintain, a civil action." 42 U.S.C. § 3612(o). Meta agreed to toll the statute of limitations in which to file a complaint to June 21, 2022 (Compl. ¶ 101), and the parties have spent over three years negotiating a proposed resolution.

The Complaint alleges that Meta has violated the Fair Housing Act in three areas:

First, the Complaint alleges that until at least 2019, Meta enabled housing advertisers to use Meta-created categories of characteristics to target or exclude Meta users from the audience for an ad. Some of those categories are alleged to be based on users' FHA-protected characteristics. Meta made certain changes to this aspect of its ad delivery system in September 2019 as part of settling FHA claims brought by private parties in this Court. *See National Fair Housing Alliance, et al. v. Facebook, Inc.*, 18 Civ. 02689 (JGK) (S.D.N.Y.) ("NFHA Lawsuit"). (Compl. ¶¶ 3, 42-61.)

Second, the Complaint alleges that Meta invites advertisers to use its proprietary tool called "Lookalike Audiences," which was modified in 2019 for housing ads into a new tool called "Special Ad Audiences." The Complaint alleges that when an advertiser selects this tool, Meta uses a machine-learning algorithm to construct audiences for housing ads based in part upon FHA-protected characteristics. (Compl. ¶¶ 4, 62-72.)

Third, the Complaint alleges that Meta designed and implemented certain algorithms to predict which Meta users will be most likely to interact with an ad. The Complaint alleges that when a particular characteristic, including FHA-protected characteristics, is predictive of user engagement with an ad, the algorithms are designed to determine to which users to deliver an ad based, in part, on that characteristic. (Compl. ¶¶ 5, 73-94.)

Meta denies liability and any and all wrongdoing alleged relating to its provision of targeting options and delivery processes for housing advertisements on any of its platforms. Meta disputes the application of the FHA to Meta with respect to the conduct alleged in the Complaint and denies all allegations made by the United States. However, to avoid the necessity of litigation among the parties, Meta has agreed to the terms of the Settlement Agreement, which is a comprehensive resolution of the United States' allegations and reflects extensive cooperation

between the parties in their years' long negotiations. The Settlement Agreement is for settlement purposes only and does not constitute an admission by Meta of any of the allegations contained in the HUD Charge or the Complaint, nor does it constitute any finding of liability against Meta.

## II.        The Proposed Settlement Agreement

The proposed Settlement Agreement is designed to remedy what the United States alleges to be discrimination on the basis of protected characteristics in delivery of housing advertisements. Among other injunctive provisions:

- Meta will build a Variance Reduction System ("VRS") for Housing Advertisements to reduce variances in Ad Impressions between Eligible Audiences and Actual Audiences, as those terms are defined in the proposed Settlement Agreement, for sex and estimated race/ethnicity, that the United States alleges are introduced by Meta's ad delivery system. (Settlement Agreement ¶ 10.)

- If, by December 16, 2022, the parties agree on metrics for how much the VRS will reduce any variances in Ad Impressions between Eligible Audiences and Actual Audiences for sex and estimated race/ethnicity that the United States alleges are introduced by Meta's ad delivery system, Meta will fully implement the VRS by December 31, 2022. (Settlement Agreement ¶ 10.) The parties will then agree on an independent third-party reviewer, who will verify periodic reports submitted by Meta about whether the VRS is meeting the agreed-upon compliance metrics. (Settlement Agreement ¶¶ 17-18.) Any dispute between Meta and the reviewer about access to information that the reviewer deems necessary to verify that the VRS is meeting the agreed-upon compliance metrics will be adjudicated by the Court. If Meta is out of compliance with the agreed-upon compliance metrics, the parties may seek Court intervention. If the parties do not agree on compliance metrics, the Settlement Agreement will terminate on December 31, 2022, and the parties will return to the positions they occupied prior to filing of the suit. (Settlement Agreement ¶¶ 3.b., 4.)

- No targeting options that Meta determines are direct descriptors of, or semantically or conceptually related to, a person or group of people based on FHA-protected characteristics are available in Housing Ad Flows, which are interfaces that advertisers use to create Housing Advertisements for publication on Meta Platforms; Meta will notify the United States if it intends to add any targeting options to Housing Ad Flows; and the parties will subject any dispute regarding potential new targeting options to the jurisdiction of the Court. (Settlement Agreement ¶¶ 3.f, 9, 25-27, 34.)

- By December 31, 2022, Meta will no longer deliver Housing Advertisements that are targeted using the Special Ad Audience tool, and will not make the Special Ad Audience

tool or the Lookalike Audience tool available for use in Housing Ad Flows.  (Settlement Agreement ¶ 9.c.)

Finally, the Settlement Agreement requires Meta to pay the maximum civil penalty under the Fair Housing Act, in the amount of $115,054, pursuant to 42 U.S.C. § 3614(d)(1)(C)(i) as modified by 28 C.F.R. § 85.5 (effective May 9, 2022). (Settlement Agreement ¶ 15.)

## ARGUMENT

### I.    The Standard for Approval of a Proposed Settlement Agreement

The Second Circuit has held that a court should approve a consent decree or settlement agreement resolving civil enforcement claims where it is "fair and reasonable" and "the public interest would not be disserved" by the injunctive relief contained therein.  *S.E.C. v. Citigroup Glob. Mkts., Inc.*, 752 F.3d 285, 294 (2d Cir. 2014) (internal quotation marks omitted); *see also U.S. Equal Emp. Opportunity Comm'n v. Int'l Ass'n of Bridge Structural & Ornamental Ironworkers Loc. 580*, No. 71-CV-02877 (LAK), 2021 WL 5920234, at *1 (S.D.N.Y. Dec. 15, 2021) (applying *Citigroup* standard in Title VII case); *United States v. JP Morgan Chase Bank*, No. 17-CV-347 (AJN), at ECF Dkt. No. 7 (S.D.N.Y. Jan. 20, 2017) (applying *Citigroup* standard in FHA case); *S.E.C. v. Caledonian Bank Ltd.*, 317 F.R.D. 358, 369 (S.D.N.Y. 2016) (applying *Citigroup* standard to proposed settlement of SEC enforcement action); *Tronox Inc. v. Anadarko Petroleum Corp. (In re Tronox Inc.)*, No. 14-CV-5495 (KBF), 2014 WL 5825308, at *8-9 (S.D.N.Y. Nov. 10, 2014) (applying *Citigroup* standard in environmental enforcement case); *United States v. IBM Corp.*, No. 14-CV-936 (KMK), 2014 WL 3057960, at *1-*5 (S.D.N.Y. July 7, 2014) (same), *order clarified*, 2014 WL 4626010 (S.D.N.Y. Aug. 7, 2014).

Consensual resolutions of FHA cases are "highly favored." *See Jones v. Amalgamated Warbasse Houses, Inc.*, 97 F.R.D. 355, 358-59 (E.D.N.Y. 1982); *see also Durrett v. Hous. Auth.*, 896 F.2d 600, 604 (1st Cir. 1990) (recognizing "a clear policy in favor of [ ] settlements" in FHA

4

cases). In light of the policy favoring settlement in FHA cases, judicial review of a proposed

settlement agreement does not entail an inquiry "into the precise legal rights of the parties" or

resolving "the merits of the claims or controversy." *Metro. Hous. Dev. Corp. v. Village of*

*Arlington Heights*, 616 F.2d 1006, 1014 (7th Cir. 1980).

In assessing whether a settlement is "fair and reasonable," the Court should consider at

least four factors:

> (1) the basic legality of the decree; (2) whether the terms of the decree, including
> its enforcement mechanism, are clear; (3) whether the consent decree reflects a
> resolution of the actual claims in the complaint; and (4) whether the consent
> decree is tainted by improper collusion or corruption of some kind.

*Citigroup*, 752 F.3d at 294-95 (internal citations omitted). "The primary focus of the inquiry . . .

should be on ensuring the [agreement] is procedurally proper, . . . taking care not to infringe on

[the Government's] discretionary authority to settle on a particular set of terms." *Id.* at 295;

*accord Tronox*, 2014 WL 5825308, at *8; *IBM Corp.*, 2014 WL 3057960, at *2. Where, as in

this case, the settlement agreement provides for injunctive relief, the Court must additionally

make sure that the "'public interest would not be disserved' by the issuance of [the] permanent

injunction." *Citigroup*, 752 F.3d at 294 (quoting *eBay, Inc. v. MercExchange*, 547 U.S. 388, 391

(2006)). In considering whether the injunction disserves the public interest, the Court should not

intrude on the Government's "decisions on discretionary matters of policy." *Id.* at 297.

Both the "fair and reasonable" test and the "public interest" test are deferential

approaches that reflect the "'strong federal policy favoring the approval and enforcement of

consent decrees.'" *Id.* at 293 (quoting *S.E.C. v. Wang*, 944 F.2d 80, 85 (2d Cir. 1991)). "Absent a

substantial basis in the record for concluding that the proposed consent decree does not meet [the

"fair and reasonable" and public interest] requirements, the district court is required to enter the

order." *Id.* at 294; *accord Tronox*, 2014 WL 5825308, at *8.

5

II.    **The Settlement Agreement Is Fair and Reasonable, and Its Injunctive Relief Is in the Public Interest**

The four factors identified in *Citigroup* for determining whether a settlement is fair and reasonable are each satisfied here. First, there is no dispute as to the agreement's "basic legality." *Citigroup*, 752 F.3d at 294. An agreement "satisfies this factor so long as it is within the Court's authority to enter the decree and within [the Government's] authority to enforce it." *IBM Corp.*, 2014 WL 3057960, at *2; *accord Tronox*, 2014 WL 5825308, at *9. Here, the Court has authority to enter the Settlement Agreement pursuant to the FHA, which authorizes injunctive relief and civil penalties, and the United States has authority to seek relief pursuant to those provisions.

The second factor identified in *Citigroup*—"whether the terms of the decree, including its enforcement mechanism, are clear," 752 F.3d at 295—is likewise satisfied. The key terms of the Settlement Agreement are straightforward. *See Tronox*, 2014 WL 5825308, at *9 ("[T]he terms of the decree, and its enforcement mechanism, are clearly stated in the Settlement Agreement"); *IBM Corp.*, 2014 WL 3057960, at *3 ("By 'clear,' the Second Circuit appears to mean that the decree properly defines its key provisions." (internal quotation marks omitted)). Meta's obligations to change its ad delivery system and to pay a civil penalty are clearly defined in the Settlement Agreement, as are dispute resolution procedures, and other relevant provisions, as detailed above.

The third factor—"whether the consent decree reflects a resolution of the actual claims in the complaint," *Citigroup*, 752 F.3d at 295—is also met here. The Complaint asserts claims for injunctive relief and civil penalties for alleged violations of the FHA. The Settlement Agreement expressly resolves these claims. *See* Settlement Agreement ¶ 28 ("As of the VRS Implementation Date, the United States shall be deemed to have fully, finally, and forever released Meta . . . from

any and all claims, charges, obligations, rights, demands, liability, action, or cause of action
under the FHA arising out of or related to the allegations in the HUD Charge and/or the
Complaint, that the United States had or may have had as of the Effective Date . . . .”).
Accordingly, there can be no dispute that the actual claims brought by the United States are
being settled by the Settlement Agreement. *See Tronox*, 2014 WL 5825308, at *9 (finding that
settlement expressly resolved all claims asserted in the complaint, along with related
environmental matters); *IBM Corp.*, 2014 WL 3057960, at *3 (finding that where settlement
provided relief sought by the complaint, the settlement agreement satisfied third *Citigroup*
factor).

 The fourth factor—“whether the [agreement] is tainted by improper collusion or
corruption of some kind,” *Citigroup*, 752 F.3d at 295—is not an issue here. This settlement is the
result of a lengthy, arm’s-length negotiation between parties represented by experienced counsel,
and there is nothing to suggest that improper collusion or corruption of any kind tainted the
negotiation process in this case. To the contrary, that the Settlement Agreement includes
significant changes to Meta’s ad delivery system, as well as the maximum civil penalty,
underscores the arm’s-length nature of the settlement process.

 Finally, the injunctive relief in the Settlement Agreement does not disserve the public
interest. As described above, the Settlement Agreement includes a series of injunctive
requirements that are designed to address what the United States alleges to be discrimination in
the delivery of housing ads. This injunctive relief is well-targeted to address the allegations of
the Complaint.

## CONCLUSION

For all of the foregoing reasons, the parties respectfully request that the Court approve

the proposed Settlement Agreement.

Dated:      New York, New York
              June 21, 2022

FOR THE UNITED STATES OF AMERICA:

DAMIAN WILLIAMS
United States Attorney for the
Southern District of New York
Attorney for the United States of America

By:              */s/ Ellen Blain*
ELLEN BLAIN
DAVID J. KENNEDY
CHRISTINE S. POSCABLO
Assistant United States Attorneys
86 Chambers Street, 3rd Floor
New York, New York 10007
Tel.: (212) 637-2733
Fax: (212) 637-0033
david.kennedy2@usdoj.gov

FOR META PLATFORMS, INC.,
f/k/a FACEBOOK, INC.:

Natalie Naugle
Director and Associate General Counsel,
Litigation
META PLATFORMS, INC.
181 Fremont Street
San Francisco, CA 94105
nnaugle@fb.com

By:              */s/ Rosemarie T. Ring*
Rosemarie T. Ring
GIBSON, DUNN & CRUTCHER LLP
555 Mission Street
San Francisco, CA 94105
Tel.: (415) 393-8247
rring@gibsondunn.com
*Counsel for Meta Platforms, Inc.*

8