UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

UNITED STATES OF AMERICA,

                Plaintiff,

- v. -

META PLATFORMS, INC. f/k/a
FACEBOOK, INC.,

                Defendant.

22 Civ. 5187 (JGK)

---

## SETTLEMENT AGREEMENT & Final Judgment

WHEREAS, on August 13, 2018, the Assistant Secretary for Fair Housing and Equal Opportunity filed an administrative complaint with the Department of Housing and Urban Development ("HUD"), alleging that Meta Platforms, Inc. f/k/a Facebook, Inc. ("Meta") violated the Fair Housing Act, 42 U.S.C. § 3601 *et seq.* ("FHA"), based on targeting options and delivery processes for housing advertisements on Meta Platforms (as defined in paragraph 3.d.);

WHEREAS, HUD investigated the administrative complaint in accordance with 42 U.S.C. § 3610(a)-(b), and the Secretary determined there was reasonable cause to issue a Charge of Discrimination under 42 U.S.C. § 3610(g)(2);

WHEREAS, on March 28, 2019, the Secretary issued a Charge of Discrimination under 42 U.S.C. § 3610(g)(2) ("HUD Charge");

WHEREAS, on April 16, 2019, Meta timely elected to have the HUD Charge decided in federal district court in accordance with 42 U.S.C. § 3612(a);

WHEREAS, 42 U.S.C. § 3612(o)(1) provides that the United States of America (the "United States"), within 30 days after the election, "shall commence and maintain[ ] a civil action";

WHEREAS, the United States and Meta (the "Parties") have agreed to toll the deadline established by 42 U.S.C. § 3612(o)(1) to permit discussion of resolution of this matter without contested litigation;

WHEREAS, the United States filed a Complaint against Meta on June 21, 2022, ("Complaint"), concurrently with the filing of this Settlement Agreement ("Settlement Agreement" or "Agreement"), alleging violations of the FHA based on Meta's provision of targeting options and delivery processes for housing advertisements on Meta Platforms;

WHEREAS, Meta denies liability and any and all wrongdoing relating to its provision of targeting options and delivery processes for housing advertisements on Meta Platforms;

WHEREAS, the Parties recognize, and the Court by entering this Settlement Agreement finds, that this Settlement Agreement has been negotiated by the Parties in good faith and will avoid litigation among the Parties about the targeting or delivery of advertisements on Meta Platforms and that this Settlement Agreement is fair, reasonable, and in the public interest;

WHEREAS, this Settlement Agreement is for settlement purposes only and does not constitute an admission by Meta of any of the allegations contained in the HUD Charge or the Complaint, nor does it constitute any finding of liability against Meta;

WHEREAS, the Parties have agreed that Meta will maintain certain changes to targeting options and make certain changes to delivery processes for housing advertisements on Meta Platforms to resolve the HUD Charge and the Complaint, subject to reaching agreement on VRS Compliance Metrics (as defined in paragraph 10.b.);

NOW, THEREFORE, before the taking of any testimony, without the adjudication, admission, finding, holding, or determination of any issue of fact or law except as provided in paragraphs 1-2 (Jurisdiction and Venue), and with the consent of the Parties,

IT IS HEREBY ADJUDGED, ORDERED, AND DECREED as follows:

## JURISDICTION AND VENUE

1. The Court has jurisdiction over the subject matter of this action, pursuant to 28 U.S.C. § 1345, 42 U.S.C. §§ 3612(o)(1), 3614.

2. For the sole purpose of entering into this Settlement Agreement and enforcement of this Settlement Agreement, the Parties agree that venue lies in this District pursuant to 28 U.S.C. § 1391.

## DEFINITIONS

3. The following terms shall have the following meanings in this Settlement Agreement:

   a. Ads Library: An interface that allows users to search and view active Housing Advertisements by advertiser or by location targeting options selected by the advertisers.

   b. Effective Date: The Effective Date of the Settlement Agreement will be the date upon which the Settlement Agreement is entered by the Court or an application to enter the Settlement Agreement is granted, whichever occurs first, as recorded on the Court's docket.

   c. FHA-Protected Classes: Race, color, religion, sex, disability, familial status, and national origin within the meaning of the FHA.

   d. Meta Platforms: Facebook, Instagram, and Messenger.

   e. Housing Advertisement: An advertisement offering a specific opportunity to rent, lease, sell, hold, convey, transfer, or buy a residential dwelling, and/or offering a specific real-estate related transaction such as a residential mortgage, homeowner's insurance, or home appraisal services within the meaning of the FHA.

3

f. <u>Housing Ad Flows</u>. Interfaces that advertisers use to create Housing Advertisements for publication on Meta Platforms.

g. <u>Special Ad Audience</u>: A tool in Housing Ad Flows that allows advertisers to create audiences with commonalities to a group of users, such as the advertisers' current customers, visitors to their websites, or people who like their Facebook pages.

## TERM OF AGREEMENT

4. <u>Initial Term</u>. If the Parties do not agree on VRS Compliance Metrics under paragraph 10.b., the term of the Settlement Agreement will be from the Effective Date of the Settlement Agreement until December 31, 2022, and, after December 31, 2022, the Settlement Agreement will be null and void and of no force or effect, and the Parties shall be returned to the legal positions they occupied prior to the Effective Date of this Settlement Agreement.

5. <u>Extended Term</u>. If the Parties agree on VRS Compliance Metrics under paragraph 10.b., the term of the Settlement Agreement will be extended to four (4) years from the Effective Date of the Settlement, and the Parties will file a joint notice with the Court by December 31, 2022, stating the following: "The Parties reached agreement on VRS Compliance Metrics and therefore the term of the Settlement Agreement will be the Extended Term."

## INJUNCTIVE RELIEF

6. Meta, its agents, employees, successors, and assigns, and all other persons in active concert or participation with any of them, are hereby enjoined as described below during the Initial Term of the Settlement Agreement, and if the term of the Settlement Agreement is extended, during the Extended Term of the Settlement Agreement.

7. <u>Publication of Housing Advertisements</u>. Since December 2019, pursuant to the terms of the Settlement Agreement and Release, entered on March 29, 2019, in *National Fair*

4

*Housing Alliance, et al. v. Facebook, Inc.*, 18 Civ. 02689 (JGK) (S.D.N.Y.) ("NFHA Settlement"), Meta has been publishing active Housing Advertisements in the Ads Library, which allows any person to search and view these Housing Advertisements.

    a.     *Ad Library.* Meta will maintain the practice described in paragraph 7.

    b.     *Notice to Users.* Meta will take reasonable steps to provide notice to users that active Housing Advertisements are available to search and view through the Ads Library.

8.     <u>Identification of Housing Advertisements</u>. Pursuant to the NFHA Settlement, Meta has implemented processes to identify Housing Advertisements, automatically and/or through human review, prior to the point at which any ads are approved for publication and to engage in commercially reasonable efforts to improve the accuracy of these processes, including by analyzing false positives and false negatives. Meta will maintain these practices and, on the VRS Implementation Date and every four months thereafter, will provide to the Reviewer and the United States a report with the number of Housing Advertisements sampled, the number of false positives, and the number of false negatives identified by Meta during the previous four-month period.

9.     <u>Ad Targeting Options</u>. Since December 2019, pursuant to the NFHA Settlement, Meta has limited targeting options available to third-party advertisers in Housing Ad Flows.

    a.     *Limitations.* Under the NFHA Settlement, in Housing Ad Flows, (1) no targeting options that Meta determines are direct descriptors of, or semantically or conceptually related to, a person or group of people based on FHA-Protected Classes are available, and (2) Meta modified the Lookalike Audience tool, which is now called the Special Ad Audience tool. "Direct descriptors" means targeting options whose names directly describe persons in FHA-Protected Classes. "Semantically or conceptually related to" means targeting options whose

names appear to be associated with FHA-Protected Classes or persons in FHA-Protected Classes.

      b.    *Targeting Options.* Meta will maintain the limitations described in paragraph 9.a. Targeting options that comply with the standards in paragraph 9.a. may be added to the Housing Ad Flows in accordance with the following procedure. Meta will provide such targeting options to the United States, which will be given thirty (30) days to review and notify Meta of any objections based on the standards in paragraph 9.a. before the targeting options are added to the Housing Ad Flows. In the event that the Parties cannot reach agreement on whether a targeting option meets the standards in paragraph 9.a., Meta may not add such option without Court approval.

      c.    *Special Ad Audiences.* By December 31, 2022, Meta will no longer deliver Housing Advertisements that are targeted using the Special Ad Audience tool, and will not make the Special Ad Audience tool or the Lookalike Audience tool available for use in Housing Ad Flows.

10.    <u>Ad Delivery</u>. Meta will make changes to delivery processes for Housing Advertisements on Meta Platforms as described below.

      a.    *Variance Reduction System ("VRS").* Meta will develop a system to reduce variances in Ad Impressions between Eligible Audiences and Actual Audiences, which the United States alleges are introduced by Meta's ad delivery system, for sex and estimated race/ethnicity.

          i.    "Ad Impressions" are the display of ads on Meta Platforms.

          ii.    "Eligible Audience" is all users who (1) fit targeting options selected by an advertiser for an ad, and (2) received one or more impressions of any type of ad on Meta Platforms during the last thirty (30) days.

6

        iii.      "Actual Audience" is all users in an Eligible Audience to whom at least one impression of a Housing Advertisement is displayed.

        iv.      To determine the baseline distribution of Ad Impressions for measuring variances between Eligible Audiences and Actual Audiences, each user in an Eligible Audience will be weighted by the total number of impressions for any ads displayed to the user on Meta Platforms in the last thirty (30) days.

        v.      Meta has proposed that use of sex and estimated race/ethnicity data for measuring variances will be limited to aggregate measurements and subject to privacy protections to prevent individual identification. For sex, measurements will be based on information reported by users in their profiles. For estimated race/ethnicity, measurements will be based on information estimating race/ethnicity using a privacy-enhanced version of the Bayesian Improved Surname Geocoding ("BISG") methodology. Alternative methods may be used as long as they reasonably enable VRS operation as described in paragraphs 10.a.-10.d.

    b.    *VRS Compliance Metrics.* By December 16, 2022, the Parties will meet and confer in good faith in an effort to agree on metrics for how much the VRS will reduce any variances in Ad Impressions between Eligible Audiences and Actual Audiences for sex and estimated race/ethnicity ("VRS Compliance Metrics").

    c.    *VRS Development Period.* Every month after the Effective Date until December 16, 2022, the Parties will meet and confer regarding the VRS development during which Meta will provide an update and discuss with the United States the development, testing, and analysis Meta has done over the last thirty (30) days regarding VRS performance under the Earth Mover's Distance ("EMD") or Wasserstein Metric; information regarding how the VRS is performing in terms of reducing variances in Ad Impressions between Eligible Audiences and

7

Actual Audiences for sex and estimated race/ethnicity; the development, testing, and analysis Meta is planning to do during the next thirty (30) days as it works toward presenting the United States with proposed compliance metrics for the VRS; and the potential for using confidence-based or other alternative metrics to measure variances in Ad Impressions between Eligible Audiences and Actual Audiences for sex and estimated race/ethnicity.

    d.    *VRS Implementation.* If the Parties agree on VRS Compliance Metrics pursuant to paragraph 10.b., Meta will implement the VRS by December 31, 2022 ("VRS Implementation Date").

11.    <u>Advertiser Certification</u>. Since October 2018, Meta has required all persons placing Housing Advertisements to certify compliance with its policies prohibiting discrimination and with applicable federal, state, and local anti-discrimination laws. Meta will continue this practice for the Term of this Settlement Agreement.

12.    <u>Advertiser Education</u>. Since December 2019, Meta has provided persons placing Housing Advertisements with enhanced educational content regarding its policies prohibiting discrimination, applicable anti-discrimination laws, and advertisers' obligations to comply with these policies and laws when placing Housing Advertisements. Meta will continue this practice for the Term of this Settlement Agreement.

13.    <u>Meta Education</u>. Within one year of the Effective Date of this Settlement Agreement, Meta will provide training on the FHA to the following employee groups: Ads Leadership Team, Regulated Ads Solutions, Mega-Taxonomy/Content Understanding Team, Machine Learning Team in BI, Ranking Feature Engineers, Ads Policy, and Advertising Product Counsel.

14.    <u>Executive Statement and Notice to Users</u>. Within ten (10) days of the Effective

Date of this Agreement, Meta will make a statement to be published on its website where such statements are regularly published, about this Settlement Agreement and the importance of taking steps to prevent unlawful discrimination on internet platforms. As part of the Executive Statement, Meta will include a summary of Meta's obligations under the Settlement Agreement and a link to the Settlement Agreement.

15. <u>Civil Penalties</u>. Meta shall pay a civil penalty in the amount of $115,054, pursuant to 42 U.S.C. § 3614(d)(1)(C)(i), according to payment instructions to be provided by undersigned counsel for the United States.

## COMPLIANCE REPORTING AND VERIFICATION

16. <u>Compliance Reporting</u>. Meta will prepare a report confirming that it has met the VRS Compliance Metrics for the previous four-month reporting period ("Compliance Report"), four (4) months after the VRS Implementation Date and every four (4) months thereafter during the Term of this Settlement Agreement ("Reporting Period").

17. <u>Verification By Third-Party Reviewer</u>. An independent third-party Reviewer will review each Compliance Report and verify compliance with the VRS Compliance Metrics.

18. <u>Reviewer Selection</u>. Within forty-five (45) days of the Effective Date, Meta shall propose a Reviewer. The Reviewer shall be a qualified, objective, independent third-party professional or firm that has, at a minimum, expertise with respect to algorithmic fairness. If the United States does not consent to the proposed Reviewer, the United States may propose its own candidate as Reviewer and, if the Parties are unable to agree, the Parties shall apply to the Court to select the Reviewer. The Parties may not propose a Reviewer who has been retained, paid, engaged, or otherwise consulted by the United States or Meta in this matter, and must disclose any other matter for which a proposed Reviewer has been retained, paid, engaged, or otherwise

consulted by the United States or Meta within the last five (5) years.

19. <u>Reviewer Fees and Costs</u>. The Reviewer may retain such employees or contractors as are necessary to complete its duties under this Settlement Agreement to verify compliance with the VRS Compliance Metrics. Any such employees or contractors shall meet the same independence and disclosure standards as the Reviewer. Reasonable fees and costs of the Reviewer shall be paid by Meta.

20. <u>Access to Information</u>. Meta will provide information to the Reviewer necessary to verify compliance with the VRS Compliance Metrics. Within thirty (30) days of the VRS Implementation Date, the Reviewer and Meta will meet and confer to discuss what information the Reviewer believes is necessary to verify compliance with the VRS Compliance Metrics. Nothing herein shall limit the Reviewer's ability to request additional information that the Reviewer believes is necessary to verify compliance with the VRS Compliance Metrics after the meet and confer referenced above. In the event of a dispute between the Reviewer and Meta over whether information requested by the Reviewer is necessary to verify compliance with the VRS Compliance Metrics, the following dispute resolution process will be followed: (a) the Reviewer will provide written notice to the Parties that such a dispute has arisen ("Notice of Dispute"); (b) Meta and the Reviewer will meet and confer and attempt to resolve any issue within ten (10) business days of the Notice of Dispute; (c) in the event Meta and the Reviewer are unable to resolve the dispute, the Parties will confer and attempt to resolve the dispute within twenty (20) business days, including, if necessary, by agreeing to hire an independent third party to resolve the issue, subject to the availability to the United States of appropriated funds; and (d) if the Parties have still not reached agreement, the Parties shall promptly seek relief from the Court.

21. <u>Protection of Information.</u> Meta will have the right to take reasonable steps to ensure the privacy and protection of its confidential, privileged, or otherwise proprietary information, including but not limited to user data and Meta's intellectual property and trade secrets. These steps may include, but are not limited to, requiring the Reviewer to enter into a contractual agreement governing access to and treatment of information provided by Meta, under which Meta will have the right to designate appropriate information provided as confidential, which shall preclude disclosure of such information by the Reviewer to any party other than the United States. If there is a dispute over the terms of any such contractual agreement, the Parties will follow the same dispute resolution process described in paragraph 20.

22. <u>Verification and Submission of Compliance Reports.</u>

   a. No later than thirty (30) days before the end of each Reporting Period, Meta will provide a Compliance Report to the United States and the Reviewer and information necessary to verify compliance with the VRS Compliance Metrics to the Reviewer. Upon request, the Reviewer shall share this information with the United States.

   b. No later than five (5) days before the end of each Reporting Period, the Reviewer will return the Compliance Report to the United States and Meta, either (1) verifying that Meta has met the VRS Compliance Metrics or (2) providing a detailed explanation of why the Reviewer cannot verify compliance with the VRS Compliance Metrics.

   c. If the Reviewer does not verify that Meta has met the VRS Compliance Metrics for any Reporting Period, the Reviewer will work with Meta in good faith to understand and address any failure to comply. Meta will also submit to the Reviewer and the United States an explanation of the likely cause and remedial steps taken, or to be taken, to meet the VRS Compliance Metrics during the next Reporting Period. If the cause cannot be fully explained at

11

the time a Compliance Report is due, Meta will submit an amended Compliance Report within the following thirty (30) days with an explanation of the likely cause and remedial steps taken, or to be taken, to meet the VRS Compliance Metrics during the next Reporting Period. If the Reviewer determines that Meta has not met the VRS Compliance Metrics for two consecutive Reporting Periods, the Parties may invoke the dispute resolution procedures set forth in paragraphs 25-27 (Dispute Resolution).

## MODIFICATION

23. In the event that the Parties jointly determine that an amendment to or modification of this Settlement Agreement is appropriate, the Parties may jointly seek an amendment to or modification of this Settlement Agreement.

## TERMINATION

24. If either Party believes that a basis to seek termination of the Settlement Agreement exists, that Party will notify the other Party and the Parties will meet and confer in good faith. If the Parties agree that the Settlement Agreement should be terminated, the Parties will submit, for the Court's approval, a joint stipulation terminating the Settlement Agreement. If the Parties do not agree that the Settlement Agreement should be terminated, the Parties will meet and confer in good faith for no less than an additional sixty (60) days before any application may be submitted by either Party for the Court's approval, seeking to terminate the Settlement Agreement.

## DISPUTE RESOLUTION

25. In the event that any disputes arise about the interpretation of or compliance with this Settlement Agreement, the Parties shall endeavor in good faith to resolve any such disputes between themselves before bringing such disputes to this Court for resolution.

26. If the United States believes that Meta has violated any provision of this Settlement Agreement, it will provide Meta written notice explaining the basis for any alleged violation and allow at least sixty (60) days for the Parties to meet and confer in good faith to attempt to resolve the alleged violation before presenting the matter to this Court.

27. In the event the Parties are not able to resolve any alleged violation of this Settlement Agreement through the meet and confer process, either Party may move this Court to impose any remedy authorized by law or equity.

## EFFECT OF SETTLEMENT

28. As of the VRS Implementation Date, the United States shall be deemed to have fully, finally, and forever released Meta and its affiliates and direct and indirect subsidiaries, as well as their predecessors, successors, heirs, and assigns, and their current or former officers, directors, agents, employees, and representatives, from any and all claims, charges, obligations, rights, demands, liability, action, or cause of action under the FHA arising out of or related to the allegations in the HUD Charge and/or the Complaint, that the United States had or may have had as of the Effective Date, for equitable, declaratory, injunctive, monetary (including monetary damages, restitution, and disgorgement), or any other form of relief, or civil or other penalties.

29. The Parties further agree that, during the Initial Term of this Settlement Agreement, and if the term of the Settlement Agreement is extended, during the Extended Term of the Settlement Agreement, the United States will not initiate any judicial proceeding or other lawsuit against Meta under the FHA arising out of or related to the allegations in the HUD Charge and/or the Complaint. Nothing in this release shall preclude or affect the right of the United States to enforce the provisions of this Settlement Agreement. This Settlement Agreement does not release any claims that may be held or are currently under investigation by

any federal agency against Meta, except for claims released by the United States in paragraph 28.

30. For the duration of this Settlement Agreement, Meta shall retain all information provided to the Reviewer under paragraph 20 (Access to Information).

31. This Settlement Agreement shall be binding on Meta, including its officers, employees, agents, assignees, and successors in interest, and all those in active concert or participation with any of them. In the event Meta seeks to transfer or assign all or part of its operations, and the successor or assign intends on carrying on the same or similar use, as a condition of sale, Meta shall obtain the written accession of the successor or assign to any obligations remaining under the Settlement Agreement for its remaining term.

## COSTS

32. The Parties shall bear their own costs, including attorneys' fees, in this action.

## NOTICES

33. Unless otherwise specified in this Settlement Agreement, whenever notifications, reports, or communications are required by this Settlement Agreement, they shall be made in writing and addressed as follows:

As to the United States by email: ellen.blain@usdoj.gov; david.kennedy2@usdoj.gov; christine.poscablo@usdoj.gov; sameena.majeed@usdoj.gov; tamar.hagler@usdoj.gov

As to the United States by mail: Chief, Civil Rights Unit, United States Attorney's Office for the Southern District of New York, 86 Chambers Street, 3rd Floor, New York, NY 10007; and Chief, Housing and Civil Enforcement Section, Civil Rights Division, U.S. Department of Justice, 4 Constitution Square, 150 M Street NE, 8th Floor, Washington, DC 20002, Attn: DJ# 175-51-225.

As to Meta by email: rring@gibsondunn.com

As to Meta by mail: Rosemarie T. Ring, Gibson, Dunn & Crutcher LLP, 555 Mission Street, San Francisco, CA 94105.

Any Party may, by written notice to the other Party, change its designated notice recipient or notice email or mail address provided above.

## RETENTION OF JURISDICTION

34. The Court shall retain jurisdiction over this action during the Initial Term of this Settlement Agreement, and if the term of the Settlement Agreement is extended, during the Extended Term of the Settlement Agreement, for the purpose of resolving disputes arising under this Settlement Agreement, entering orders modifying this Settlement Agreement pursuant to paragraph 23 (Modification), enforcing compliance with the terms of this Settlement Agreement, and resolving any collateral attacks or challenges to this Settlement Agreement, including, without limitation, collateral attacks or challenges to the Parties' rights and obligations under this Settlement Agreement and practices relating to the injunctive relief ordered herein.

## SIGNATORIES / SERVICE

35. Each undersigned representative of Meta and the United States certifies that he or she is fully authorized to enter into this Settlement Agreement and to execute and legally bind the Party he or she represents to this Settlement Agreement.

36. This Settlement Agreement may be signed in counterparts, and its validity shall not be challenged on that basis.

## INTEGRATION

37. This Settlement Agreement constitutes the final, complete, and exclusive agreement and understanding among the Parties with respect to the settlement embodied in the

Settlement Agreement and supersedes all prior agreements and understandings, whether oral or written, concerning the settlement embodied herein. The Parties acknowledge that there are no representations, agreements, or understandings relating to the settlement other than those expressly contained in this Settlement Agreement. The Parties understand and agree that this Settlement Agreement contains the entire agreement between them with respect to the settlement embodied in this Settlement Agreement, and that any statements, representations, promises, agreements, or negotiation, whether oral or written, concerning the settlement embodied herein that are not included in this Settlement Agreement shall be of no force or effect.

## FINAL JUDGMENT

38. Upon approval and entry of this Settlement Agreement by the Court, this Settlement Agreement shall constitute a final judgment of the Court as to the United States and Meta. The Court finds that there is no just reason for delay and therefore enters this judgment as a final judgment under Fed. R. Civ. P. 54 and 58.

Dated: New York, New York
June 21, 2022

FOR THE UNITED STATES:

KRISTEN CLARKE
Assistant Attorney General
Civil Rights Division

SAMEENA SHINA MAJEED
Chief, Housing and Civil Enforcement
Section

R. TAMAR HAGLER
Deputy Chief
JUNIS L. BALDON
HARIN C. SONG
KINARA A. FLAGG
Trial Attorneys
Housing and Civil Enforcement Section
Civil Rights Division
U.S. Department of Justice
950 Pennsylvania Avenue NW – 4CON
Washington, DC 20530
Tel.: (202) 353-1339
Fax: (202) 514-1116

DAMIAN WILLIAMS
United States Attorney for the
Southern District of New York

By: _____
ELLEN BLAIN
DAVID J. KENNEDY
CHRISTINE S. POSCABLO
Assistant United States Attorneys
86 Chambers Street, 3rd Floor
New York, New York 10007
Tel.: (212) 637-2733
david.kennedy2@usdoj.gov

FOR META PLATFORMS, INC., f/k/a
FACEBOOK, INC:

Natalie Naugle
Director and Associate General Counsel,
Litigation
META PLATFORMS, INC.
181 Fremont Street
San Francisco, CA 94105
nnaugle@fb.com

As to Form:

Rosemarie T. Ring
GIBSON, DUNN & CRUTCHER LLP
555 Mission Street
San Francisco, CA 94105
Tel.: (415) 393-8247
rring@gibsondunn.com

17

Dated: New York, New York
June 21, 2022

FOR THE UNITED STATES:

KRISTEN CLARKE
Assistant Attorney General
Civil Rights Division

SAMEENA SHINA MAJEED
Chief, Housing and Civil Enforcement
Section

_____
R. TAMAR HAGLER
Deputy Chief
JUNIS L. BALDON
HARIN C. SONG
KINARA A. FLAGG
Trial Attorneys
Housing and Civil Enforcement Section
Civil Rights Division
U.S. Department of Justice
950 Pennsylvania Avenue NW – 4CON
Washington, DC 20530
Tel.: (202) 353-1339
Fax: (202) 514-1116

DAMIAN WILLIAMS
United States Attorney for the
Southern District of New York

By: _____
ELLEN BLAIN
DAVID J. KENNEDY
CHRISTINE S. POSCABLO
Assistant United States Attorneys
86 Chambers Street, 3rd Floor
New York, New York 10007
Tel.: (212) 637-2733
david.kennedy2@usdoj.gov


FOR META PLATFORMS, INC., f/k/a
FACEBOOK, INC:

*/s/ Natalie Naugle*
_____
Natalie Naugle
Director and Associate General Counsel,
Litigation
META PLATFORMS, INC.
181 Fremont Street
San Francisco, CA 94105
nnaugle@fb.com

As to Form:

*/s/ Rosemarie Ring*
_____
Rosemarie T. Ring
GIBSON, DUNN & CRUTCHER LLP
555 Mission Street
San Francisco, CA 94105
Tel.: (415) 393-8247
rring@gibsondunn.com

17

SO ORDERED:

Dated: New York, New York
June 26, 2022

_____
HON.
United States District Judge

The Clerk is directed to close this case.

So ordered.

/s/ JGK
6/26/22  U.S.D.J.